UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

CAROLYN JANE SIINO,　　　　　　　　　　　　　**NOT FOR PUBLICATION**

　　　　　　　　　　　　Plaintiff,　　　　　　　　　**MEMORANDUM & ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　　　14-CV-7217 (MKB)
　　　　　v.

NYC HUMAN RESOURCES ADMINISTRATION/
DEPARTMENT OF SOCIAL SERVICES, NYC
DEPARTMENT OF HOMELESS SERVICES, CITY
OF NEW YORK, NEW YORK FOUNDATION
FOR SENIOR CITIZENS, GUARDIAN SERVICES,
INC., and CROWN HOUSE REALTY CO. LLC,

　　　　　　　　　　　　Defendants.

-------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

　　　　Plaintiff Carolyn Siino, proceeding *pro se*, commenced the above-captioned civil rights action against Defendants New York City Human Resources Administration/Department of Social Services, New York City Department of Homeless Services, City of New York, New York Foundation for Senior Citizens, Guardian Services, Inc. and Crown House Reality Co., LLC. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 for violations of her First, Fourth, Fifth and Fourteenth Amendment rights, relief under state law for intentional infliction of severe emotional distress, negligent infliction of severe emotional distress, larceny, conversion, and negligence, and injunctive or declaratory relief against the City. Plaintiff's request to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915 is granted. For the reasons discussed below, Plaintiff's claims are dismissed.

## I. Background

Plaintiff is a sixty-five year old homeless person, living in New York City. (Compl. 1, 2.) Approximately two years prior to the commencement of this action, Plaintiff lived in a rent-stabilized apartment but was evicted for nonpayment of rent. (Compl. 2.) Plaintiff "became a ward in a guardianship in Queens Supreme Court," following guardianship proceedings.[1] (*Id.*) Plaintiff's Complaint centers on what "[she] believes has been an avoidable ordeal for [her] during that period until the present." (*Id.*)

In 2011, Plaintiff lived in an apartment owned by Crown House Realty Co. LLC ("Crown House"). (Compl. 2.) Plaintiff sued Crown House for allegedly exposing her to fumes and carbon monoxide emanating from the laundry and boiler rooms. *See Siino v. Crown House Realty Co. LLC, et al.*, No. 12-CV-1905, 2012 WL 1450411 (E.D.N.Y. Apr. 25, 2012) (dismissing complaint for lack of subject matter jurisdiction and for failure to state a claim). Plaintiff was struggling to pay rent, and alleges that the New York City Human Resources Administration ("HRA") failed to pay her rent, and failed to enable her to obtain a loan in order to assist her with payment of rent. (Compl. 3–4.) Plaintiff was involved in proceedings in Queens County housing court, and was served with eviction notices in 2013. (Compl. 4–5.) Plaintiff alleges that during this time, HRA "pretend[ed] to be filling out applications for [Plaintiff's] housing while steering [Plaintiff] into guardianship," including "folding" a paper

---

[1] Plaintiff alleges that she agreed to a "limited guardianship," and was assigned a guardian by the New York State Supreme Court, Queens County, (s*ee* Compl. 2, 6), but also alleges that she "was considered to be mentally impaired and incapacitated." (Compl. 16.) According to letters from New York Foundation for Senior Citizens Guardian Services Inc. and from Plaintiff, submitted in response to this Court's February 20, 2015 order, Plaintiff's guardianship ended in February or March of 2015. (*See* Letter from New York Foundation for Senior Citizens Guardian Services Inc. dated Mar. 13, 2015, at 1, Docket Entry No. 6; Pl. Letter dated Mar. 31, 2015, at 3, Docket Entry No. 6.)

that Plaintiff signed, which Plaintiff alleges to be papers authorizing guardianship. (Compl. 6.) Plaintiff alleges that on June 26, 2013, the HRA submitted "legal papers" to Queens County Supreme Court which authorized a "temporary limited guardianship." (Compl. 7.) Plaintiff had no legal representation at that time. (*Id.*)

According to the Complaint, the guardianship required Plaintiff to relocate to a shelter, which Plaintiff was unable to do because "no shelter would accept [her] shopping cart," in which she kept "18 years of notes for future prophecy books as per [Plaintiff's] religious calling." (Compl. 8.) Plaintiff alleges that the HRA and New York Foundation for Senior Citizens, Guardian Services, Inc. ("Guardian Services") failed to help Plaintiff pay her rent or relocate her, breached a fiduciary duty to her, and "violated guardianship . . . laws." (Compl. 8, 17.) Plaintiff contends that Guardian Services paid her an insufficient allowance to buy items, such as boots. (Compl. 8–9.) She further contends that Guardian Services and the Human Resources Administration were engaged in the "theft" of her property by failing to provide storage facilities or otherwise safeguard the majority of her belongings when she was required to vacate her residence at Crown House. (Compl. 10–11, 14, 22, 35–36.)

Plaintiff alleges that in late 2013 and early 2014, she went through a "[l]egal [p]ossession . . . and [t]hree [u]nwanted [i]nstitutionalizations." (Compl. 16.) At that time, Plaintiff was admitted to Forest Hills Hospital on two occasions and Elmhurst Hospital Center on another. (Compl. 18–19.) During the visit to Elmhurst Hospital, Plaintiff alleges that her belongings, including her "wagon" (i.e., shopping cart) and bag were "seiz[ed]." (Compl. 19.) Plaintiff makes references to New York City and Guardian Services, indicating that she believes they were involved. (*Id.*) Since the incident, Plaintiff has been "[t]rapped in an [i]llegal and [u]nconstitutional [g]uardianship." (Compl. 21.) Plaintiff protests that she "cannot get rid of

[Guardian Services], because [Plaintiff] does not have a high enough income and a lawyer, although Queens Supreme Court cites a housing concern and a financial management concern." (Compl. 24.) Plaintiff believes that the actions of Guardian Services and the HRA were motivated by the fact that Plaintiff is not a veteran, does not have children, and is not employed, which Plaintiff alleges violates her right to equal protection because she has been placed in an unconstitutional "uncategorized" category. (Compl. 3, 6, 28–29.)

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that the Plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (same); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action, if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

4

### b. New York City agencies

Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter, chap. 17 § 396. This provision "has been construed to mean that New York City departments [and agencies], as distinct from the City itself, lack the capacity to be sued." *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159–60 (2d Cir. 2008) (*per curiam*) (citing *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007)); *see also Shamilov v. Human Res. Admin.*, No. 10-CV-8745, 2011 WL 6085550, at *5 (S.D.N.Y. Dec. 6, 2011) ("As a municipal agency of New York City, the HRA is not a suable entity." (citing N.Y. City Charter, chap. 17 § 396; *Ximines*, 516 F.3d at 160)). For this reason, all claims against the HRA, Department of Social Services and the New York City Department of Homeless Services are dismissed. 28 U.S.C. §§ 1915(e)(2)(B).

### c. *Rooker-Feldman* doctrine

To the extent Plaintiff seeks to vacate decisions entered by the state courts concerning either the appointment of a guardian or her eviction, or seeks declaratory judgment regarding the constitutionality of the state court proceedings, this Court cannot grant such relief. Under the *Rooker-Feldman* doctrine, federal courts generally lack subject matter jurisdiction over claims that seek review of adverse state court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings"); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for

5

errors"); *see also Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014) (denying relief "[t]o the extent that [the plaintiff] only seeks a declaration that his state conviction is invalid, [because the plaintiff] seeks nothing more than review of a state court judgment."); *Galtieri v. Kelly*, 441 F. Supp. 2d 447, 453 (E.D.N.Y. 2006) ("[F]ederal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005))).

Specifically, the *Rooker-Feldman* doctrine deprives a federal court of jurisdiction to consider a plaintiff's claim when that plaintiff is "complaining of injuries caused by state-court judgments rendered prior to the commencement of district court proceedings and inviting district court review of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also McKithen v. Brown*, 626 F.3d 143, 154–55 (2d Cir. 2010) (rejecting as-applied challenge to New York state law which invited review of New York state court judgment, explaining the rule expressed in *Exxon*). The underlying theory justifying this doctrine is "the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock*, 422 F.3d at 85; *see also Williams v. 2720 Realty Co.*, No. 12-CV-6408, 2013 WL 55685, at *2 (E.D.N.Y. Jan. 3, 2013) ("[O]nly the United States Supreme Court is vested with jurisdiction over appeals from final state court judgments."). Under the *Rooker-Feldman* doctrine, federal courts must abstain from considering claims when the following four requirements are met:

> (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced.

6

*McKithen*, 626 F.3d at 154.  The first and fourth requirements are known as procedural requirements, whereas the second and third are seen as substantive requirements.  *Morrison v. City of New York*, 591 F.3d 109, 112 (2d Cir. 2010).

The procedural requirements are met here, as Plaintiff directly alleges that she was "[t]rapped" in guardianship as the result of a state court judgment entered in 2013.  Furthermore, the substantive requirements are also met, as Plaintiff alleges that that her injuries arise from her "guardianship in Queens Supreme Court." (Compl. 21–24.)  She further alleges that the City and HRA failed to meet the burden in the guardianship proceedings, thus subjecting her to an "illegal guardianship." (Compl. 11–12.)  To the extent that Plaintiff seeks review of state court decisions and orders relating to her guardianship proceedings, federal court review of those decisions and orders would be barred by the *Rooker-Feldman* doctrine.  *See Duboys v. Bomba*, 62 F. App'x 404, 405 (2d Cir. 2003) (summary order) (upholding determination of district court that request to vacate guardianship and probate proceedings was barred by the *Rooker-Feldman* doctrine); *In re Card*, No. 12-CV-114, 2012 WL 382730, at *2 n.5 (E.D.N.Y. Feb. 6, 2012) (noting that "*Rooker-Feldman* doctrine would require a finding that subject matter jurisdiction is lacking because [plaintiff] is essentially asking the Court to review an adverse state court judgment appointing a guardian made before" the plaintiff commenced the federal action.)  This Court may not consider Plaintiff's challenges to past New York state proceedings related to her guardianship proceedings, and thus any such claim is dismissed for lack of jurisdiction.

    d. **Section 1983**

Plaintiff brings claims pursuant to 42 U.S.C. § 1983 against the Human Resources Administration and the City, alleging violations of her rights to "freedom of speech, freedom of the press, religious practice and religious viewpoints, and due process rights," and "seizure and

search, liberty, and due process rights, "dignity right," "equal protection and freedom of speech rights." (Compl. 29–31.) To the extent review of these claims is not barred by the *Rooker-Feldman* doctrine, Plaintiff's claims are dismissed for failure to state a claim.

In order to sustain a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 claims generally must be brought against the individuals personally responsible for the alleged deprivation of constitutional rights, not against the government entities or agencies where those individuals are employed. A plaintiff seeking to recover money damages "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678. Because Plaintiff has not alleged any claims against any individual Defendants, to the extent she was attempting to do so, Plaintiff has failed to state a Section 1983 claim.

### i. City of New York

Plaintiff alleges that the City of New York, through its agencies, unlawfully deemed her "uncategorized" for the purpose of certain benefits in violation of equal protection, infringed on her First Amendment rights, tricked her into a search and seizure at the hospital which led to unwanted hospital stays, violated her right to dignity, and subjected her to an "illegal guardianship" in violation of the United States Constitution. (Compl. 29–32.)

In order to sustain a claim for relief pursuant to Section 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury

and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694–95 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."); *see Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." (alteration in original) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007))). A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent or widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff. *See Parker v. City of Long Beach*, 563 F. App'x 39, 41 (2d Cir. 2014), *as amended*, (Apr. 21, 2014) (failure to train); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (persistent and widespread practice); *Schnitter v. City of Rochester*, 556 F. App'x 5, 9 (2d Cir. 2014) (failure to train or supervise); *Hines v. Albany Police Dep't*, 520 F. App'x 5, 7 (2d Cir. 2013) (actions of policymakers); *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (formal policy and act of a person with policymaking authority for the municipality).

Here, Plaintiff does not allege, and nothing in her Complaint suggests, that any of the allegedly wrongful acts or omissions on the part of any City employee are attributable to an

9

official policy or custom, through any of the four avenues discussed above. Plaintiff has failed to state a claim pursuant to Section 1983 against the City of New York, and her Section 1983 claims against the City of New York are dismissed.

### ii. New York Foundation for Senior Citizens, Guardian Services, Inc. and Crown House Realty Co. LLC

It is unclear whether Plaintiff seeks to bring Section 1983 claims against Guardian Services and Crown House, but to the extent she intends to do so, such claims are dismissed for the reasons discussed below.

As an initial matter, Plaintiff makes no allegations as to Crown House regarding her Section 1983 claims. Her Section 1983 claims against Crown House are therefore dismissed. Plaintiff also fails to plausibly allege that the New York Foundation for Senior Citizens, a non-profit organization, *see New York Foundation for Senior Citizens* http://www.nyfsc.org (last visited April 21, 2015), can be liable for any alleged violations of her constitutional rights pursuant to Section 1983 since Plaintiff fails to allege that it was acting under color of state law.

As for Guardian Services, Plaintiff's court-appointed guardian, Plaintiff has not alleged any facts to support a finding that Guardian Services is a state actor. A claim for relief under Section 1983 must allege facts showing that the challenged conduct was "committed by a person acting under color of state law," 42 U.S.C. § 1983. Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'" *Hooda v. Brookhaven Nat. Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks and citation omitted); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). "Because the

United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (quoting *United States v. Int'l. Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir.1991)) (internal quotation marks omitted). "[L]iability under § 1983 may be imposed upon private individuals who are not state actors [*inter alia*] if there exists a 'sufficiently close nexus between the State and the challenged action of the private entity so that the action of the latter may be fairly treated as that of the State itself' (the 'close nexus/joint action' test) . . . ." *Faraldo v. Kessler*, No. 08-CV-0261, 2008 WL 216608, at *4 (E.D.N.Y. Jan. 23, 2008) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004–1005 (1982)).

Plaintiff alleges that HRA, a New York City agency, "continues to Pay [Guardian Services] to keep [Plaintiff] silent." (Compl. 29.) However, this allegation is insufficient to show that Guardian Services was acting with a sufficient "close nexus" to the state to support a Section 1983 claim against Guardian Services. *See Moose Lodge No. 107*, 407 U.S. at 173 ("The Court has never held, of course, that discrimination by an otherwise private entity would be violative of the Equal Protection Clause if the private entity receives any sort of benefit or service at all from the State, or if it is subject to state regulation in any degree whatever."); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 531 (E.D.N.Y. 2010) (dismissing Section 1983 claims when the plaintiff asserted no factual basis for allegations that private actors were acting in a conspiracy with state actors to deprive the plaintiff of constitutional rights) *aff'd*, 434 F. App'x 32 (2d Cir. 2011) (summary order). The mere fact that Guardian Services was appointed by a State Court is also insufficient to show state action. *See Duboys ex rel. Duboys v. Bomba*, 199 F. Supp. 2d 166, 170 (S.D.N.Y. 2002) ("[A] court appointment of a private individual is not

11

sufficient to establish state action.") *aff'd sub nom. Duboys v. Bomba*, 62 F. App'x 404 (2d Cir. 2003) (summary order). Even affording the Complaint the most liberal reading, Plaintiff fails to state a claim against Guardian Services.[2] Plaintiff's Section 1983 claims against Guardian Services are dismissed.

### e. State Law Claims

Plaintiff's only federal claims were brought pursuant to Section 1983. (*See* Compl. 2.) Plaintiff has not stated a claim under any federal law, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, larceny, conversion, and negligence. *See* 28 U.S.C. § 1367(c)(3). ("District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."). Because Plaintiff's Complaint does not contain sufficient facts that may fairly be read to state a claim for any violation of Plaintiff's constitutional rights, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the Complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to replead her Complaint to correct the deficiencies noted above. Any amended complaint must be filed within 30 days of the date of this Memorandum and Order. The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order. No summons shall issue at this time and all further proceedings shall be stayed until

---

[2] Even if Plaintiff had made allegations as to Crown House, Plaintiff's Section 1983 claims against Crown House, a private business, would also be dismissed because Plaintiff has not alleged that Crown House acted under color of state law.

Plaintiff has complied with this order. If Plaintiff fails to file an amended complaint within 30 days, the instant action shall be dismissed.

### III. Conclusion

Plaintiff is granted 30 days from the date of this order to replead her Complaint as specified above. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: April 21, 2015
      Brooklyn, New York