UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

CAROLYN JANE SIINO,

                         Plaintiff,             **MEMORANDUM & ORDER**
                                                      14-CV-7217 (MKB)
                 v.

CITY OF NEW YORK, NEW YORK
FOUNDATION FOR SENIOR CITIZENS,
GUARDIAN SERVICES, INC., and CROWN
HOUSE REALTY CO. LLC,

                         Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Carolyn Jane Siino, proceeding *pro se*, filed the above-captioned action against Defendants, seeking relief pursuant to 42 U.S.C. § 1983 for various violations of her First, Fourth and Fourteenth Amendment rights, relief pursuant to state common law, and injunctive or declaratory relief against the City of New York. By Memorandum and Order dated April 21, 2015 ("April Memorandum and Order"), the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP") and dismissed the Complaint. Plaintiff was granted thirty days to replead her Complaint as specified in the order. On May 19, 2015, the Court received Plaintiff's Amended Complaint. For the reasons discussed below, Plaintiff's Amended Complaint is dismissed.

**I. Background**

        In its April Memorandum and Order, the Court found that Plaintiff failed to state a claim against the City of New York for violations of her constitutional rights pursuant to 42 U.S.C. § 1983 because Plaintiff failed to allege that any of the actions taken against her were attributable

to an official policy or custom as required by *Monell v. Dep't of Soc. Servs.*, 435 U.S. 658, 694–85 (1978). *Siino v. N.Y.C. Human Res. Admin./Dep't of Soc. Servs.*, No. 14-CV-7217, 2015 WL 1877654, at *5 (E.D.N.Y. Apr. 21, 2015). To the extent Plaintiff was attempting to bring § 1983 claims against the New York Foundation for Senior Citizens, Guardian Services Inc. ("Guardian Services") and Crown House Realty Co. LLC ("Crown House"), the Court dismissed those claims for failure to allege either party was acting under color of state law. *Id.* at *6. The Court determined that Plaintiff's attempt to overturn the result of state court guardianship proceedings was barred by the *Rooker-Feldman* doctrine, and that Plaintiff's claims against New York City agencies were dismissed because the agencies lack the capacity to be sued. *Id.* at *2–4. In light of Plaintiff's *pro se* status, the Court granted Plaintiff leave to amend her Complaint to correct noted deficiencies as to New York City, Guardian Services and Crown House.

On May 19, 2015, the Court received Plaintiff's Amended Complaint, which names the City of New York, Guardian Services and Crown House as Defendants. Plaintiff substantially repeats her initial allegations, set forth in greater detail in *Siino*, 2015 WL 1877654, at *1–2. In sum, Plaintiff complains of the City of New York's failure to provide her with housing assistance, which resulted in her eviction from an apartment owned by Crown House and subsequent homelessness and guardianship with Guardian services. Plaintiff argues that her constitutional rights were violated because she was unlawfully categorized for the purposes of housing benefits as "unemployed" and "childless," she received no legal representation in her proceedings, she was denied benefits such as free rent and relocation services and unlawfully "steered" into guardianship proceedings rather than provided a new apartment, her property was inappropriately removed from her apartment and not properly accounted for or relocated, she was subjected to unwanted psychiatric examinations and hospitalizations, she was denied her

computer which allowed her to practice her religion through her website, and some of her property was destroyed.

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that the Plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (same); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action, if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### b. Plaintiff's Amended Complaint

In the April Memorandum and Order, Plaintiff was granted leave to amend the Complaint to provide facts that, fairly read, would state a claim for violation of her constitutional rights against Defendants City of New York, Guardian Services and Crown House. *Siino*, 2015 WL

3

1877654, at *7. Plaintiff's Amended Complaint submits a lengthy series of factual allegations and requests that the Court "determine what policies, practices, and customs are illegal and/or unconstitutional . . . ." (Am. Compl. 2.) Toward the end of the Amended Complaint, Plaintiff states that she is bringing claims pursuant to Section 1983 for violation of various constitutional rights and claims for intentional infliction of severe emotional distress, negligent infliction of severe emotional distress, larceny, conversion and negligence. (*See id.* at 30–38.) Plaintiff also references various other claims, alleging that she was subject to abuse, exploitation and "jeopardy." Plaintiff seeks damages and injunctive or declaratory relief. Even under the less stringent standards applicable to *pro se* plaintiffs, the Amended Complaint fails to state a claim pursuant to 42 U.S.C. § 1983, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

        **i.   Section 1983 claims**

Plaintiff invokes several provisions of the United States Constitution and 42 U.S.C. § 1983, alleging that various agencies of the City of New York and Guardian Services as an "agent" of New York City, (*see* Am. Compl. 8), violated Plaintiff's constitutional rights to "dignity, liberty, equal protection, due process, property, and constitutional [*sic*] search and seizure of person and property," freedom of speech, freedom of the press, "religious practice and religious viewpoints," and claims for intentional infliction of severe emotional distress, negligent infliction of severe emotional distress, larceny, conversion and negligence. (*See id.* at 30–37.) For substantially the same reasons discussed in the April Memorandum and Order, Plaintiff's Section 1983 claims are dismissed for failure to state a claim.

In order to sustain a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2)

that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 claims generally must be brought against the individuals personally responsible for the alleged deprivation of constitutional rights, not against the government entities or agencies where those individuals are employed. A plaintiff seeking to recover money damages "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678. Furthermore, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mt. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted).

### 1. City of New York

As in the original Complaint, Plaintiff fails to allege that the vast majority of the allegedly wrongful acts or omissions on the part of City employees involved in her eviction and guardianship proceedings are attributable to an official policy or custom of the City of New York. *Monell*, 436 U.S. at 694–95; *see also Siino*, 2015 WL 1877654, at *5. Instead, Plaintiff sets forth allegations, most of which were presented in the original Complaint, illustrating her dissatisfaction with New York City agencies and with Guardian Services for failing to prevent her eviction and for not providing adequate housing assistance. (*See* Am. Compl. 30–35.) On two occasions, Plaintiff points to specific policies which she deems objectionable. Plaintiff alleges that the Department of Homeless Services has a policy not to grant rental assistance to unmarried individuals, and that the City of New York has a policy to give preference to families for homeless prevention services. (Am. Compl. 7, 34.) Plaintiff also alleges that the City of New York had a policy, practice or custom to regard homeless people as "in need of mere

5

transport" to a hospital or shelter. (*Id.* at 33, 35.) Beyond that, Plaintiff includes only general allegations regarding city policies, alleging that the "policies, practices and customs" of city agencies resulted in the alleged destruction of her property, "unjust institutionalization," and denial of housing subsidies, (*id.* at 12–14, 22), but fails to include anything more than a vague reference to a "policy" or "practice," and fails to identify any point at which an individual acting pursuant to a city policy engaged in the challenged conduct.

As outlined in the April Memorandum and Order, to sustain a claim for relief pursuant to Section 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell*, 436 U.S. at 694–95 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."); *see Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." (alteration in original) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007))).

Plaintiff's vague and conclusory assertions that the City of New York has policies, practices and customs which violated her constitutional rights are insufficient to meet the pleadings standards required to establish liability under *Monell*. *See Monell*, 436 U.S. at 694–95; *see also Iqbal*, 556 U.S. at 678. As to Plaintiff's allegations regarding New York City's alleged policy of regarding homeless persons as "in need of mere transport," Plaintiff has failed to allege

any facts that would support the existence of such a policy. *See Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) ("The allegations that [defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient."); *see also Collins v. West Hartford Police Dep't*, 324 F. App'x 137, 139 (2d Cir. 2009) (affirming dismissal of Section 1983 claims because plaintiff "failed to identify a municipal policy or custom that caused him injury"). Plaintiff also challenges her denial of rent subsidies and other benefits, alleging that the City of New York denied her because she is unemployed and childless. (Am. Compl. 7, 34.) Plaintiff has presented nothing more than her own speculation as to the City's policies, and has presented no facts that would establish the existence of an official policy or a persistent and widespread practice, alleging only that she personally has been denied certain benefits. *See Carter v. Rennessanice [sic] Men's Shelter*, No. 12-CV-5999, 2013 WL 308685, at *3 (E.D.N.Y. Jan. 25, 2013) (dismissing Section 1983 claims against the City of New York for failing to allege that City was acting pursuant to a formal policy, or to illustrate existence of policy through factual allegations beyond what happened to defendant); *Perri v. Bloomberg*, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (dismissing plaintiff's claims against City of New York, including Adult Protective services, for failure to state *Monell* claim by simply reciting that the City violated plaintiff's rights through its policies); *Rose v. N.Y.C. Dep't of Human Res.*, No. 12-CV-1764, 2013 WL 69149, at *7 (S.D.N.Y. Jan. 4, 2013) (finding bare allegation that New York City Department of Human Resources supervisors implemented policy favoring persons of color with HIV/AIDS virus over white persons without the virus in awarding food and rent subsidies "not sufficient to constitute a plausible factual allegation that a municipal policy existed that deprived him of his rights") *report and recommendation adopted*, No. 12-CV-1764, 2013 WL 323995 (S.D.N.Y. Jan. 24, 2013); *see also Jones v. City of New York*, No. 12-

7

CV-9144, 2013 WL 4028183, at *6 (S.D.N.Y. Aug. 8, 2013) (rejecting procedural due process and substantive due process challenges to denial of relocation services and shelter benefits). The Amended Complaint, therefore, is dismissed as to the City of New York for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Private Entities

Similarly, Plaintiff fails to show that the New York Foundation and Crown House Realty Co. LLC were state actors in order to be liable under 42 U.S.C. § 1983. Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'" *Hooda v. Brookhaven Nat. Lab.*, 659 F.Supp.2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)). The conduct of a nominally private entity may be attributed to the state, satisfying the state action requirement, if:

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the state," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)); *see Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013). Each of the three avenues requires a fact-specific inquiry into the challenged conduct, and in order to find state action, a court must determine that the specific actions of which Plaintiff complains can be fairly deemed that of the state. *See Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 265 (2d Cir. 2014) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 159 (1978)) (examining public function test, noting that the function performed by the private entity must have historically been

8

"an exclusive prerogative" of the state); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491–92 (2d Cir. 2009) (examining joint action test, noting that state action cannot be premised solely on subjection to state regulation, funding, licensing or even state creation); *Lynch v. Southampton Animal Shelter Found. Inc.*, 971 F. Supp. 2d 340, 349–50 (E.D.N.Y. 2013) (examining compulsion test).

### A. New York Foundation for Senior Citizens, Guardian Services, Inc.

Plaintiff alleges that Guardian Services, a private organization, is an "agent" of New York City because New York City agencies "pay [Guardian Services] for [Plaintiff]," and "should be monitoring [Guardian Services], which submits reports to Queens Supreme Court and likely to other City divisions." (Am. Compl. 8.) She alleges that New York City "failed to monitor" Guardian Services and implies that New York City is thus responsible for Guardian Services' actions.[1] (*Id.* at 31.)

Plaintiff has failed to allege that Guardian Services was acting under color of state law. It is well established that acceptance of state funding alone is insufficient to show state action. *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012). Furthermore, Plaintiff has failed to show that Guardian Services was acting under the compulsion of the state, in joint action with the state, or in place of the state for a public function when it took any of the actions she challenges, including the alleged failure to provide her with certain housing assistance, "heavy duty

---

[1] To the extent Plaintiff is attempting to state a failure to supervise claim against New York City for Guardian Services' conduct, Plaintiff has done nothing to show that the City was "faced with a pattern of misconduct and [did] nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *See Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). As an initial matter, Plaintiff does not allege that the Guardian Services employees are also employees of the City, and second, Plaintiff does not allege that there is any pattern of conduct beyond the treatment she experienced.

9

cleaning" of her apartment, and mishandling of her property. *See Sybalski*, 546 F.3d at 259 (noting that "care for the mentally disabled is neither traditionally nor exclusively reserved to the state," and thus is insufficient to establish state action under the public function test (citations omitted)); *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011) (noting that a legal guardian is not a state actor because he must exercise independent judgment on behalf of clients and thus state is not responsible for the guardian's conduct), *aff'd*, 485 F. App'x 500 (2d Cir. 2012); *Arena v. Dep't of Soc. Servs. of Nassau Cty.*, 216 F. Supp. 2d 146, 155 (E.D.N.Y. 2002) (finding law guardian is not a state actor); *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (noting that appointment by state court and payment from state funds is not sufficient to render private actors state actors, and that legal guardians are not state actors because they exercise independent professional judgment). Thus, Plaintiff has failed to state a claim that Guardian Services was acting under color of state law when it took the actions of which Plaintiff complains. Accordingly, her Section 1983 claim is dismissed as to Guardian Services for failure to state a claim.

### B. Crown House Realty Co. LLC

Plaintiff fails to state a claim against Crown House because she has not adequately alleged that Crown House, a private organization, acted under color of state law. Plaintiff alleges that in 2011, she lived in an apartment owned by Crown House and commenced an action against them relating to her housing conditions. (Am. Compl. 2.) However, Plaintiff specifically states that she is "no longer pursuing any of this time-barred matter." (*Id.* at 2.) Plaintiff alleges that in 2012, she began failing to pay her rent, and in 2013 was subject to eviction from the Crown House-owned apartment. (*Id.* at 2, 9.) Plaintiff's claims are generally related to Defendants' alleged failure to provide Plaintiff with housing assistance or legal assistance and

failure to take inventory of Plaintiff's property, and to the alleged disappearance of some of Plaintiff's property following the eviction notice. (*See id.* at 35–38.) Plaintiff's only allegation against Crown House appears to be that, acting through its lawyer or other persons, it disposed of some property left in her apartment following the eviction.[2] (*See id.* at 36–37.) Even reading the Amended Complaint liberally, Plaintiff has failed to allege how Crown House's actions can be fairly attributed to the state on any theory of state action. *See Young v. Halle Hous. Assocs., L.P.*, 152 F. Supp. 2d 355, 363–66 (S.D.N.Y. 2001) (finding that plaintiffs failed to demonstrate how private landlord's challenged policy is the product of state action, despite the fact that landlord provided low-cost housing and received government funding). Therefore, Plaintiff's Section 1983 claim is dismissed as to Crown House for failure to state a claim.

### III. Conclusion

Accordingly, this action is dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). As the Court has dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good

---

[2] Plaintiff also contends that she could not return to the apartment due to a threat from Crown House's superintendent. (Am. Compl. 17.) She alleges that Crown House is responsible for larceny, conversion and negligence with respect to the missing property. (*Id.* at 23.)

faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to close this case.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: July 9, 2015
　　　　Brooklyn, New York