UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

CAROLYN JANE SIINO,

                              Plaintiff,                    **NOT FOR PUBLICATION**

                    v.                                       **MEMORANDUM & ORDER**
                                                             14-CV-7217 (MKB)
CITY OF NEW YORK, NEW YORK
FOUNDATION FOR SENIOR CITIZENS,
GUARDIAN SERVICES, INC. and CROWN
HOUSE REALTY CO. LLC,

                              Defendants.

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

    Plaintiff Carolyn Jane Siino, proceeding *pro se*, filed the above-captioned action against

Defendants the City of New York (the "City"), New York Foundation for Senior Services,

Guardian Services, Inc. ("Guardian Services"), and Crown House Realty Co. LLC ("Crown

House"), asserting claims pursuant to 42 U.S.C. § 1983 for violations of her First, Fourth and

Fourteenth Amendment rights. (Compl. 29–37, Docket Entry No. 1.) Plaintiff also asserted

claims pursuant to state common law and sought injunctive or declaratory relief against the City.

(*Id.*) By Memorandum and Order dated April 21, 2015, the Court granted Plaintiff's request to

proceed *in forma pauperis* ("IFP"), dismissed the Complaint, and granted Plaintiff thirty days to

file an Amended Complaint. Plaintiff filed an Amended Complaint on May 19, 2015. By

Memorandum and Order dated July 9, 2015, the Court dismissed the Amended Complaint (the

"July 9, 2015 Decision"). (Docket Entry No. 12.) The Clerk of Court closed the case on July 10,

2015. (July 10, 2015 J., Docket Entry No. 13.)

    On July 22, 2015, Plaintiff moved for relief from the judgment pursuant to Rule 60 of the

Federal Rules of Civil Procedure, and sought leave to file a Second Amended Complaint (the "Motion to Reopen").[1]  (Pl. Req. for Relief from J. ("Pl. Mot."), Docket Entry No. 14.)  On January 28, 2016, Plaintiff filed a second motion seeking relief from the judgment pursuant to Rule 60 and to reopen her case, which Plaintiff states is intended to "supplement" her first motion (the "Supplementary Motion").   (Pl. Second Req. for Relief from J. ("Pl. Supp. Mot.") 1, Docket Entry No. 15.)

For the reasons set forth below, the Court denies the Motion to Reopen, which seeks to vacate the judgment and to reconsider all of her claims, except as to Plaintiff's Fair Housing Act ("FHA") claim.  As to Plaintiff's FHA claim, the Court considers the claim because it failed to consider this claim previously.  For the reasons set forth below, the Court dismisses in part Plaintiff's FHA claim and grants Plaintiff leave to file a Second Amended Complaint with respect to a FHA claim based on Plaintiff's disability.  The Court also grants Plaintiff leave to replead the due process claim referenced in the Supplementary Motion.

## I.  Background

 The Court assumes familiarity with the facts as set forth more fully in the Court's April 21, 2015 and July 9, 2015 decisions.  *See Siino v. N.Y.C. Human Res. Admin./Dep't of Soc. Servs. et al.*, No. 14-CV-7217, 2015 WL 1877654 (E.D.N.Y. Apr. 21, 2015) ("*Siino I*"); *Siino v. City of New York et al.*, No. 14-CV-7217, 2015 WL 4210827 (E.D.N.Y. July 9, 2015) ("*Siino II*").  The Court provides a summary of the pertinent facts.

---

[1]  Plaintiff styles the Motion to Reopen as a motion for relief from a final judgment or order pursuant to Rule 60 of the Federal Rules of Civil Procedure.  (Pl. Mot. 1.)  To the extent Plaintiff challenges the Court's decision on the grounds that the Court overlooked relevant facts or controlling law, the Court will consider Plaintiff's motion as a motion to reconsider the July 9, 2015 Decision.  *See Bey v. City of New York*, No. 13-CV-9103, 2015 WL 5473155, at *1 (S.D.N.Y. Sept. 16, 2015) (construing plaintiff's motion for relief from court's order as a motion for reconsideration).

Plaintiff is a sixty-five year old homeless person living in New York City. (Compl. 1–2.) The Amended Complaint names the City, Guardian Services and Crown House as Defendants and repeats the allegations in the Complaint, which are summarized in greater detail in *Siino I*, 2015 WL 1877654, at *1–2. In the Amended Complaint, Plaintiff complains of the City's failure to provide her with housing assistance, which resulted in her eviction from an apartment owned by Crown House and subsequent homelessness and guardianship with Guardian Services. *Siino II*, 2015 WL 4210827, at *1. Plaintiff alleges that her constitutional rights were violated because she was unlawfully categorized for the purposes of housing benefits as "unemployed" and "childless," she was denied benefits such as free rent and relocation services, and she was unlawfully "steered" into guardianship proceedings rather than being provided with a new apartment. *Id*. Plaintiff also alleges that she was not represented by counsel in her guardianship proceedings, her property was inappropriately removed from her apartment and improperly inventoried or relocated, she was subjected to unwanted psychiatric examinations and hospitalizations, she was denied her computer which allowed her to practice her religion through her website, and some of her property was destroyed. *Id*.

Plaintiff brings claims pursuant to Section 1983 for violations of various constitutional rights, as well as intentional infliction of severe emotional distress, negligent infliction of severe emotional distress, larceny, conversion and negligence claims. (Am. Compl. 30–38, Docket Entry No. 9.) She asks the Court to "determine what policies, practices, and customs are illegal and/or unconstitutional." (*Id*. at 2.) Plaintiff also references various other claims, alleging that she was subject to abuse, exploitation and "jeopardy." (*Id*. at 29.) Plaintiff seeks damages and injunctive or declaratory relief. (*Id*. at 38–39.)

## II. Discussion

### a. Standards of review

#### i. Rule 60(b)

Federal Rule of Civil Procedure 60(b) provides for relief from a final judgment, order, or proceeding in the case of:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Reese v. Bahash*, 574 F. App'x 21, 23 (2d Cir. 2014) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). Such a motion "must be made within a reasonable time," *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (citing Fed. R. Civ. P. 60(c)), and cannot be used "as a substitute for appeal," *Stevens v. Schneiderman*, No. 05-CV-10819, 2011 WL 6780583, at *4 (S.D.N.Y. Dec. 23, 2011) (quoting *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009)). "A Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." *Maldonado v. Local 803 I.B. of Tr. Health & Welfare Fund*, 490 F. App'x 405, 406 (2d Cir. 2013) (citing *Zerman v. Jacobs*, 751 F.2d 82, 85 (2d Cir. 1984)).

Each of the first five subsections of Rule 60(b) addresses a particular circumstance under which a party can obtain relief from a final judgment. *See Dugan v. United States*, No. 11-CV-3973, 2015 WL 5244341, at *3 (E.D.N.Y. Sept. 8, 2015). Generally, Rule 60(b)(1) is invoked to provide relief from a final judgment or order due to the mistake, inadvertence,

surprise or excusable neglect "of a party or his representatives," and other provisions of the

Federal Rules, including Rule 59(e) of the Federal Rules of Civil Procedure, are used to

challenge a decision of the district court.  *Turner v. Vill. of Lakewood, N.Y.*, 594 F. App'x 25, 25

(2d Cir. 2015) (quoting *Montco, Inc. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754, 759

(2d Cir. 1981)).

 "Rule 60(b)(2) provides relief when the movant presents newly discovered evidence that

could not have been discovered earlier and that is relevant to the merits of the litigation." *Aponte*

*v. City of N.Y. Dep't of Corr.*, 377 F. App'x 99, 100 (2d Cir. 2010) (quotation marks omitted)

(quoting *Boule v. Hutton*, 328 F.3d 84, 95 (2d Cir. 2003)).  Evidence that was "clearly available"

at the time of the judgment is "not 'newly discovered'" for the purposes of a motion under

Rule 60(b)(2).  *Whitaker v. N.Y. Univ.*, 543 F. App'x 113, 114 (2d Cir. 2013).

 "Rule 60(b)(3) motions 'cannot serve as an attempt to relitigate the merits' and may only

be granted when the movant establishes a material misrepresentation or fraud by 'clear and

convincing evidence.'"  *ACE Investors, LLC v. Rubin*, 561 F. App'x 114, 117 (2d Cir. 2014)

(quoting *Fleming v. N.Y. Univ.*, 865 F.2d 478, 484 (2d Cir. 1989)).  Furthermore, a motion under

subsection (b)(3) may fail if "the proffered evidence is irrelevant to the ultimate outcome."

*Latimore v. NBC Universal Inc.*, 489 F. App'x 521, 521 (2d Cir. 2013) (citing *Fleming,* 865 F.2d

at 485).

 Rule 60(b)(4) "applies only in the rare instance where a judgment is premised either on a

certain type of jurisdictional error or on a violation of due process that deprives a party of notice

or the opportunity to be heard." *Williams v. City Univ. of N.Y.*, 590 F. App'x 84, 85 (2d Cir.)

(internal quotation marks omitted) (quoting *U.S. Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270

(2010)), *cert. denied sub nom.*, *Williams v. City Univ. of N.Y., Brooklyn Coll.*, --- U.S. ---, 136 S.

Ct. 253 (2015). "Relief from a judgment pursuant to Rule 60(b)(4) is not warranted 'simply because [the judgment] is or may have been erroneous.'" *Estate of Shefner ex rel. Shefner v. Beraudiere*, 582 F. App'x 9, 12 (2d Cir. 2014) (quoting *Espinosa*, 559 U.S. at 270–71). Rule 60(b)(5) provides that the court may relieve a party from a judgment if "the judgment . . . is based on an earlier judgment that has been reversed or vacated." *Green v. Walsh*, 460 F. App'x 71, 72 (2d Cir. 2012) (quoting Fed. R. Civ. 60(b)(5)).

Finally, "Rule 60(b)(6) relief is only available if Rules 60(b)(1) through (5) do not apply." *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 109 (2d Cir. 2012); *Stevens*, 676 F.3d at 67 ("Rule 60(b)(1) and Rule 60(b)(6) are 'mutually exclusive,' such 'that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.'" (quoting *In re Emergency Beacon Corp.*, 666 F.2d at 760)). In order to qualify for Rule 60(b)(6) relief, a plaintiff must also demonstrate either "extraordinary circumstances, or extreme hardship." *DeCurtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (quoting *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004)); *see also Stevens*, 676 F.3d at 67 (noting that "courts require the party seeking to avail itself of [Rule 60(b)(6)] to demonstrate that 'extraordinary circumstances' warrant relief" (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988))).

### ii.   Reconsideration

The standard for granting a motion for reconsideration is strict, and "[r]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Cedar Petrochem., Inc. v. Dongbu Hannong Chem. Co., Ltd.*, --- F. App'x ---, ---, 2015 WL 5999215, at *3 (2d Cir. Oct. 15, 2015) (quoting *Shrader v. CSX*

*Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *Bank of Am. Nat'l Ass'n v. AIG Fin. Prods. Corp.*, 509 F. App'x 24, 27 (2d Cir. 2013) ("The standard for granting such a motion is strict . . . ." (quoting *Shrader*, 70 F.3d at 257)), *as amended*, (Apr. 5, 2013); *see also* Local Civ. R. 6.3 (providing that the moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked").

A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)), *as amended* (July 13, 2012). In addition, it is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." *Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014) (citation and internal quotation marks omitted). In order to prevail on a motion for reconsideration, "the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." *Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (citations and internal quotation marks omitted); *see also Henderson v. City of New York*, No. 05-CV-2588, 2011 WL 5513228, at *1 (E.D.N.Y. Nov. 10, 2011) ("In order to have been overlooked, the decisions or data in question must have been put before [the court] on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." (citations and internal quotation marks omitted)); *cf. Stoner v. Young Concert Artists, Inc.*, No. 11-CV-7279, 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because a party is dissatisfied with the outcome of his case. To do

otherwise would be a waste of judicial resources." (citations and internal quotation marks omitted)).

### b. Summary of the Court's prior ruling

In the July 9, 2015 Decision, the Court determined that, even under the less stringent standards applicable to claims asserted by *pro se* plaintiffs, the Amended Complaint failed to state a claim pursuant to 42 U.S.C. § 1983. *Siino II*, 2015 WL 4210827, at *2. Accordingly, the Court dismissed Plaintiff's Section 1983 claims, and declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *Id*. at *2, 6.

With respect to Plaintiff's Section 1983 claims against the City, the Court determined that Plaintiff failed to allege that any of the conduct on which her claims were premised — the allegedly wrongful acts or omissions on the part of City employees involved in her eviction, the alleged destruction of her property, and her guardianship proceedings — were attributable to an official policy or custom of the City, as required by *Monell v. Department of Social Services*, 435 U.S. 658, 694–95 (1978). *Siino II*, 2015 WL 4210827, at *3–4 (explaining that Plaintiff's vague and conclusory assertion that the City has policies that violated her rights was insufficient to meet *Monell*'s pleadings standards). The Court explained that Plaintiff's pleadings failed to identify when any individual acting pursuant to a City policy engaged in the challenged conduct. *Id*. at *3.

The Court further determined that Plaintiff's allegations regarding two City policies pursuant to which she was allegedly denied rent subsidies and other benefits — the Department of Homeless Services' policy of not granting rental assistance to unmarried individuals, and the City of New York's policy of giving preference to families for purposes of allocating homelessness prevention services — were too speculative to support Plaintiff's claims. *Id*. at *3

(citing Am. Compl. 7, 34).  Moreover, the Court explained that the pleadings pertained only to Plaintiff's own personal denial of benefits, which was insufficient to establish the existence of an official policy or a persistent and widespread practice.  *Id*. at *3 (citations omitted); *see, e.g.*, *Carter v. Rennessanice [sic] Men's Shelter*, No. 12-CV-5999, 2013 WL 308685, at *3 (E.D.N.Y. Jan. 25, 2013) (dismissing Section 1983 claims against the City of New York because the plaintiff failed to allege that the City was acting pursuant to a formal policy or to illustrate the existence of such a policy or widespread practice based on factual allegations beyond what happened to the plaintiff).  Finally, with respect to Plaintiff's allegations that the City had a policy, practice or custom of regarding homeless people as "in need of mere transport" to a hospital or shelter, (Am. Compl. 33, 35), the Court determined that Plaintiff failed to allege any facts that would support the existence of such a policy.  *Siino II*, 2015 WL 4210827, at *4 (citing *Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) ("The allegations that [defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient.")).

With respect to Plaintiff's Section 1983 claims asserted against Guardian Services and Crown House, the Court determined that Plaintiff failed to show that either was a state actor, as required to subject a private entity to liability under Section 1983.  *Id*. at *5 (citing *Hooda v. Brookhaven Nat. Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'")).  The Court determined that Plaintiff's allegations that Guardian Services has been rendered an agent of the City through public funding was insufficient to allege that Guardian Services was acting under color of state law.  *Id*. (citing Am. Compl. 8).  The Court explained that the acceptance of state funding alone is insufficient to show state action, and that Plaintiff also failed to show that Guardian Services

was acting under the compulsion of the state, acted jointly with the state, or acted in place of the state to fulfill a public function. *Id.* (first citing *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012); and then citing *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011) (noting that a legal guardian is not a state actor because he exercises independent judgment on behalf of clients and thus the state is not responsible for the guardian's conduct), *aff'd*, 485 F. App'x 500 (2d Cir. 2012)). The Court further determined that Plaintiff similarly had not adequately alleged that Crown House, a private organization, acted under color of state law nor explained how its actions with respect to the disposal of Plaintiff's possessions can be fairly attributed to the state under any theory of state action. *Id.* at \*6 (citing *Young v. Halle Hous. Assocs., L.P.*, 152 F. Supp. 2d 355, 363–66 (S.D.N.Y. 2001) (finding that plaintiffs failed to demonstrate how private landlord's challenged policy was the product of state action, despite the fact that landlord provided low-cost housing and received government funding)).

### c. The Motion to Reopen

In the Motion to Reopen, Plaintiff, in essence, seeks reconsideration of the July 9, 2015 Decision. (Pl. Mot. 1.) Plaintiff argues that the Court "overlooked [Plaintiff's] statements of the facts of federal claims" and that she "believed that [she] had already discussed [the] facts." (*Id.*) Plaintiff quotes heavily from a section of the Amended Complaint labeled "*Pro Se* Will Attempt to Make Statements of Claims," in which she describes various alleged violations of her rights that she seeks to vindicate pursuant to Section 1983 and further explains these allegations. (*Id.* at 1–7 (quoting Am. Compl. 30–35).) Plaintiff identifies allegations she believes the Court did not adequately acknowledge or accept, and also cites legal arguments that she believes provide a basis for her claims. Reading these arguments together, Plaintiff appears to seek reconsideration

of her Section 1983 claims on the grounds that the Court overlooked critical facts or controlling law.

### i.    Plaintiff's arguments

#### 1.    The City

Plaintiff presents arguments in support of her Section 1983 claims against the City.  She addresses the allegations that she was involuntarily transported by ambulance pursuant to an alleged City policy regarding the transportation of homeless persons.  Plaintiff reiterates her assertion that certain individuals failed to "reveal[] that [Plaintiff] could decline the ambulance" and that the resulting harm to Plaintiff was "as a matter of standard operating procedure" arising from the policies and practices of the City.  (Pl. Mot. 5.)  Plaintiff appears to argue that because the policy at issue in *Monell* related to pregnant municipal employees taking mandatory leaves of absence for medical reasons, the fact that she argues "there was no immediate necessity for medical treatment" when she was transported should be relevant to establishing her claim for municipal liability.[2]  (*Id*.)  Plaintiff additionally restates her challenge to the City's denial of Plaintiff's request for rent subsidies and the allegation that this denial was pursuant to a City policy of denying such benefits to people who are unemployed and childless.  Plaintiff argues that the City has a policy of providing services to families only, and that Plaintiff "was omitted by DHS policies and practices from getting" her needs met and that she was "appalled" that she "had to have a child to get help paying . . . rent."  (*Id*. at 6.)

#### 2.    Guardian Services and Crown House

Plaintiff also presents arguments as to the Section 1983 claims asserted against Guardian

---

[2]  This is a liberal reading of Plaintiff's statement that in "[t]rying to overcome" the City's "profile of [Plaintiff] as mentally impaired and incapacitated, [she] may have worked around the medical aspect of this claim, and *Monell* deals with medical reasons."  (Pl. Mot. 4.)

Services and Crown House, both of which are private entities. Plaintiff reiterates her allegations regarding the disposal of her property by employees of Guardian Services or Crown House, which, according to Plaintiff, was done pursuant to a vaguely referenced City policy about cleaning services and property storage. (*Id*. at 1–2.) Plaintiff also argues that the City Marshal did not take an inventory of her possessions in violation of a policy allegedly posted on the Department of Investigations' website. (*Id*. at 2 (citing Am. Compl. 31–32).) Plaintiff states that these actions are attributable to the City because "City policymakers' irresponsibility [and] presumptuous management fosters escalating violat[ions] of wards' and nonwards' rights to property" as well as other legal violations. (*Id*. at 3.)

### ii. Plaintiff has not presented a basis to vacate the judgment pursuant to Rule 60

Plaintiff fails to state under which subsections of Rule 60 she seeks relief and fails to present arguments relevant to vacating the judgment pursuant to any of Rule 60(b)'s subsections. As to Rule 60(b)(1), Plaintiff does not seek relief from a final judgment arising from the mistake, inadvertence, surprise or excusable neglect "of a party or his representatives." *Turner*, 594 F. App'x at 25 ("If a party seeks to challenge a decision of the district court . . . on the grounds that it is mistaken or erroneous, there are other rules under which he or she may proceed, most obviously a direct appeal in the Court of Appeals . . . ."). Rather, Plaintiff argues that the Court overlooked facts and legal arguments, which is insufficient.

As to Rule 60(b)(2), Plaintiff does not present newly discovered evidence relevant to the merits of the litigation. *Aponte*, 377 F. App'x at 100 (upholding district court's determination that additional evidence presented pursuant to Rule 60(b)(2) was relevant to a claim of legal malpractice, not to the underlying litigation, and was thus not a basis to vacate judgment and grant a new trial).

Plaintiff also fails to present arguments pursuant to Rule 60(b)(3), "establish[ing] a material misrepresentation or fraud" by another party to the litigation "by 'clear and convincing evidence.'" *ACE Investors*, 561 F. App'x at 117. In the absence of such evidence, Plaintiff cannot establish a basis to vacate the judgment pursuant to Rule 60(b)(3).

Further, Rule 60(b)(4) provides no basis for relief as Plaintiff cannot show that this is a "rare instance" where "a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Williams*, 590 F. App'x at 85. Plaintiff has not argued that any jurisdictional error exists, nor has she argued that she has been deprived of notice or an opportunity to be heard.

Likewise, as to Rule 60(b)(5), Plaintiff cannot demonstrate that the Court's judgment was based on an earlier judgment, as the Court dismissed the Amended complaint for failure to plead a plausible claim. *See Green*, F. App'x at 72 (explaining that Rule 60(b)(5) provides relief where a judgment is "based on an earlier judgment that has been reversed or vacated" and approving the denial of such relief because the moving party failed to show "how the district court's initial decision . . . was 'based on' the earlier state judgment").

Lastly, the "rare relief" of Rule 60(b)(6) is not available, as Plaintiff fails to demonstrate any "extraordinary circumstances" or "extreme hardship." *DeCurtis*, 529 F. App'x at 86. Accordingly, assessing the motion as styled, Plaintiff's motion to vacate the judgment is denied.

### iii. The Court did not overlook important data or factual matters

The Court construes Plaintiff's motion as one seeking reconsideration. In the Amended Complaint, Plaintiff relies on two specific policies that she alleges caused her harm and led to the violation of her rights: a Department of Homeless Services' policy of not granting rental assistance to unmarried individuals and a City policy of giving preference to families for the

purpose of allocating homelessness prevention services. (Am. Compl. 7, 34.) In the Motion to Reopen, Plaintiff reiterates her objections to the denial of her request for rental subsidies and argues that the City's policies deny benefits to people who are unemployed and childless. (Pl. Mot. 6.) In the July 9, 2015 Decision, the Court addressed these allegations and concluded that Plaintiff had failed to present facts that could establish the existence of an official policy or a persistent and widespread practice sufficient to state a claim against the City pursuant to Section 1983. *Siino II*, 2015 WL 4210827, at *3.

Reconsideration is not "an occasion for repeating old arguments." *Simon*, 18 F. Supp. 3d at 425 (citation omitted). The Court did not overlook Plaintiff's allegations about the denial of her housing benefits or about City policies that limit access to benefits on the basis of employment or family status. Rather, the Court found them speculative, vague and conclusory and thus insufficient to allege that City employees were acting pursuant to an official policy, as required to plead a claim for municipal liability. *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) ("The Court did not overlook this argument; it rejected it."); *Siino II*, 2015 WL 4210827, at *4 (citing *Perri v. Bloomberg*, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012) (dismissing plaintiff's claims against City of New York, including Adult Protective Services, for failure to state *Monell* claim by simply reciting that the City violated plaintiff's rights through its policies)). Plaintiff's restatement of these different allegations is not a basis to reconsider the July 9, 2015 Decision.

In the Amended Complaint, Plaintiff also alleges that she was involuntarily transported by ambulance pursuant to a City policy regarding homeless persons as being "in need of mere transport." (Am. Compl. 33, 35.) In seeking reconsideration, Plaintiff again explains these allegations and argues that because of "standard operating procedure" she was not informed that

she could decline the ambulance and thus the harm to her was the result of a City policy. (Pl. Mot. 5.) In the July 9, 2015 Decision, the Court concluded that Plaintiff failed to allege any facts that would support the existence of such a policy. *Siino II*, 2015 WL 4210827, at *4 (citations omitted); *see also Missel*, 351 F. App'x at 545 ("The allegations that [defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient."); *Collins v. West Hartford Police Dep't*, 324 F. App'x 137, 139 (2d Cir. 2009) (affirming dismissal of Section 1983 claims because plaintiff "failed to identify a municipal policy or custom that caused him injury").

Plaintiff's discussion of harm caused to her by an alleged City policy regarding the transportation of homeless persons does not identify allegations that the Court overlooked in reaching its conclusion that Plaintiff failed to state a claim. *See Moore v. T-Mobile USA, Inc.*, No. 10-CV-527, 2013 WL 55799, at *3 (E.D.N.Y. Jan. 2, 2013) ("The fact that this Court did not find that this particular argument merited discussion should not be misconstrued as evidence that this Court overlooked this argument."). Rather, in explaining her allegations, Plaintiff appears to express disagreement with the Court's conclusion that her allegations were insufficient to state a claim under Section 1983. Dissatisfaction with the Court's conclusion is not a basis for reconsideration. *See Stoner*, 2013 WL 2425137 at *1 ("[T]his Court will not reconsider issues already examined simply because a party is dissatisfied with the outcome of his case."). Plaintiff's restatement of her allegations about harms resulting from a policy regarding the transportation of homeless persons is not a basis to reconsider the July 9, 2015 Decision.

Finally, Plaintiff reiterates her allegations that her property was improperly disposed of, allegedly in violation of a City policy about cleaning services and the storage of property. (Pl. Mot. 1–2.) In the Amended Complaint, Plaintiff alleges that her property was disposed of by

Crown House employees.  (Am. Compl. 30–32.)  In support of the Motion to Reopen, Plaintiff

argues that "[n]o inventory was taken . . . against DOI written policy" and that her property

"being 90% left behind . . . was easy" to accomplish despite being in violation of an alleged

written policy.  (*Id*. at 2 (quoting Am. Compl. 31–32).)  She argues that City policymakers

should be responsible for these actions because their "presumptuous management fosters

escalating violations of wards' and nonwards' rights to property."  (*Id*. at 3.)  In the July 9, 2015

Decision, the Court determined that Plaintiff's allegations about the Crown House employees'

disposal of the property left in her apartment could not be "fairly attributed to the state on any

theory of state action."  *Siino II*, 2015 WL 4210827, at *6 (citations omitted); *see also Young v.

Halle Hous. Assocs., L.P.*, 152 F. Supp. 2d 355, 363–66 (S.D.N.Y. 2001) (finding that plaintiffs

failed to demonstrate that private landlord's challenged policy was the product of state action,

despite the fact that landlord provided low-cost housing and received government funding).

Plaintiff presented these allegations in support of her claim against Crown House, and the

Court determined that the allegations were insufficient to allege that Crown House is a state actor

subject to suit under Section 1983.  *Siino II*, 2015 WL 4210827, at *6.  Plaintiff has failed to

identify any facts or allegations that the Court overlooked.  Instead, she reiterates allegations

about the loss of her property and the City's obligation to provide an inventory of her property,

allegations that were not overlooked by the Court and are, in any event, irrelevant to whether

Crown House is a state actor for purposes of Section 1983.  Reconsideration is not "an occasion

for repeating old arguments."  *Simon*, 18 F. Supp. 3d at 425 (citation and internal quotation

marks omitted).  Moreover, to the extent that Plaintiff presents the same allegations to state a

claim against the City, Plaintiff's allegations were not overlooked by the Court when it

determined that Plaintiff's assertions were too speculative and conclusory to allege that City

employees were acting pursuant to an official policy. *Siino II*, 2015 WL 4210827, at \*4.
Plaintiff's restatement of her allegations about the disposal of her property is not a basis to
reconsider the Court's determination in the July 9, 2015 Decision that Plaintiff has failed to
allege that Crown House is a state actor or that the disposal of her property was undertaken
pursuant to a City policy.

### iv. The Court did not overlook controlling law as to Plaintiff's *Monell* claim

The Amended Complaint attempts to state a claim for municipal liability through vague
allegations and references to "City policies, practices, and customs." (*See, e.g.*, Am. Compl. 33.)
In the July 9, 2015 Decision, after explaining the requirements for pleading municipal liability,
the Court determined that Plaintiff failed to sufficiently allege that an individual acting pursuant
to a City policy engaged in the challenged conduct. *Siino II*, 2015 WL 4210827, at \*3 (first
citing *Monell*, 436 U.S. at 694–95 ("[A] local government may not be sued under § 1983 for an
injury inflicted solely by its employees or agents. Instead, it is when execution of a
government's policy or custom . . . inflicts the injury that the government as an entity is
responsible under § 1983."); and then citing *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129,
140 (2d Cir. 2010) ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its
employees, a plaintiff is required to plead and prove three elements: (1) an official policy or
custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."
(quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007))).

In seeking reconsideration, Plaintiff argues that the *Monell* standard is relevant given "the
medical aspect" of her municipal liability claim with respect to being transported in an
ambulance even though there "was no immediate necessity for medical treatment." (Pl. Mot. 4.)
Plaintiff cites to *Monell* and identifies the municipal policy at issue in that case, which related to

pregnant municipal employees taking mandatory leaves of absence for medical reasons. (*Id*.) Plaintiff relies on the fact that the particular policy at issue in *Monell* was medically-related to argue that the similarity between *Monell* and the instant case supports her claim for municipal liability. (*Id*.)

In the July 9, 2015 Decision, the Court explained the *Monell* standard for establishing a Section 1983 claim against a municipality. *Siino II*, 2015 WL 4210827, at *3. In seeking reconsideration, Plaintiff correctly describes the factual background of *Monell*, but does not address the standard it announced, which standard governs the adequacy of her claim. To the extent that Plaintiff's allegations and the facts of *Monell* both involve medical policies, this similarity does not alter the law relevant to assessing the Amended Complaint. Plaintiff has not identified controlling law overlooked by the Court.

### d. The Supplementary Motion

In the Supplementary Motion, Plaintiff argues that she can state a new claim pursuant to Section 1983, based on an injury that allegedly arose on December 1, 2015, when she learned that the New York City Human Resources Administration ("HRA") had enrolled her in Medicaid's Excess Income Program ("EIP"). (Pl. Supp. Mot. 1.) Plaintiff states that her new claim is premised on "newly discovered facts earlier undetectable" and "newly discovered events [that were] unpredictable by [her]." (*Id*.) Plaintiff argues that the HRA did not give her "a choice" with respect to her health benefit enrollment, "although [the] HRA knew" that Plaintiff was eligible for health insurance as a retired teacher. (*Id*. at 3.) Plaintiff also appears to argue that she was improperly billed for recent medical treatment, despite the fact that she "had savings from the guardianship." (*Id*. at 2.) Plaintiff states that she learned of issues with her medical billing from a letter that she received in January of 2016, indicating that she was charged "a

surprise $315.51 a month spenddown and a billing for a mystery amount." (*Id*.)  She argues that the "City, through [the] HRA, is discouraging, jeopardizing, and denying health care, while simultaneously depriving individuals eligible for [Medicaid's] EIP of economic liberty." (*Id*. at 4.)

Plaintiff appears to argue that she has been deprived of due process, either when she was enrolled in Medicaid or when she was billed through the program.  She describes her attempts to challenge her enrollment in Medicaid's EIP and to challenge the improper medical billing. Plaintiff states that she visited the "Medicaid office" twice in January of 2016, and was "denied service when it was discovered that" her photo identification had been stolen.  (*Id*. at 3.)  Plaintiff was instead "given a paper on how to request a fair hearing." (*Id*.)  Plaintiff appears to further state that, when she attempted to call one of the Medicaid telephone numbers provided to her, she was asked to provide a telephone number where she could be reached, but was unable to do so because she spends her days eating at a soup kitchen, visiting doctors, and using the Internet at the library.  (*Id*.)  Plaintiff states that she also called "[the] HRA Central Compliance Unit . . . for a fair hearing," but does not state the outcome of this call or whether she was afforded a hearing.  (*Id*.)  Plaintiff appears to state that, on January 20, 2016, she learned that "the fair hearing computer has [Plaintiff]" listed as active in the Medicaid system, allegedly "denying [her] right to due process [and] to petition [the] City for a redress of grievances," including obtaining Medicaid "free of upfront coercion and a looming wipeout of [her] savings." (*Id*.)

Medicaid is "a federal-state program that helps indigent persons meet the cost of necessary medical services." *Fishman v. Paolucci*, --- F. App'x ---, ---, 2015 WL 5999318, at *1 (2d Cir. Oct. 15, 2015) (citing 42 U.S.C. § 1396-1) (considering due process and statutory claims

brought by a class of persons whose Medicaid benefits, provided by the State of New York, were terminated after they each failed to appear for a fair hearing regarding revocation of their benefits); *see also Roach v. Morse*, 440 F.3d 53, 59 (2d Cir. 2006) (explaining that Medicaid "requires states that participate to cover the cost of care for the categorically needy," which includes individuals "unable to cover the costs of their basic needs" who are already eligible for certain forms of public assistance).

"To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre-or post-deprivation process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013). "In order to do this, a plaintiff must 'first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process.'" *Id.* (citations omitted); *see also Looney v. Black*, 702 F.3d 701, 706–07 (2d Cir. 2012) (discussing the elements of a procedural due process claim). To have a property interest in a public benefit, an applicant must have "more than an abstract need or desire for it . . . [or] a unilateral expectation of it"; rather, the applicant must have a "legitimate claim of entitlement to it." *Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Some courts have held that Medicaid and other health benefits "constitute a protected property interest." *Fishman ex rel. Fishman v. Daines*, No. 09-CV-5248, 2014 WL 4638962, at *7 (E.D.N.Y. Sept. 16, 2014) *vacated and remanded on other grounds sub nom. Fishman*, --- F. App'x ---, 2015 WL 5999318; *Wooten v. N.Y.C. Human Res. Admin.*, 421 F. Supp. 2d 737, 741 (S.D.N.Y. 2006) (explaining that, with respect to Medicaid benefits, "[m]edical benefits like the ones at issue do constitute a protected property interest"). "Due process does not mandate 'actual' notice when the government seeks to infringe on a property interest, but rather a method of notice that is

'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Fishman ex rel. Fishman*, 2014 WL 4638962, at *7 (internal quotation marks omitted) (first citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); then citing *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989)).

The Medicaid Act also provides procedural rights, and when a state receives federal funds, it must comply with "the requirements of the Medicaid Act and its implementing regulations." *Fishman*, --- F. App'x at ---, 2015 WL 5999318, at *1 (internal quotation marks omitted) (quoting *Rabin v. Wilson–Coker*, 362 F.3d 190, 192 (2d Cir. 2004)); *Roach v. Morse*, 440 F.3d 53, 56–58 (2d Cir. 2006). In particular, states are obligated to grant "an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3). In *Fishman*, the Second Circuit explained that the statutory hearing requirement may confer additional rights beyond the scope of due process procedural rights. *Fishman*, --- F. App'x at ---, 2015 WL 5999318, at *1 (noting that the federal regulation governing fair hearings with respect to Medicaid benefits requires that such a hearing system both "meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970), and any additional standards specified in this subpart" (citing 42 C.F.R. § 431.205(d))).

Liberally construing Plaintiff's claims, the Court understands Plaintiff to be alleging that the HRA failed to provide her with notice of her enrollment in EIP or failed to provide her a process to challenge improper medical billing and, as a result, that Plaintiff seeks reconsideration as to a denial of her right to due process and a violation of her rights under the Medicaid Act,

pursuant to Section 1983.[3] (*Id.*) However, because Plaintiff asserts these allegations for the first time in the Supplementary Motion, the Court cannot consider them on Plaintiff's motion for reconsideration. Reconsideration is not a venue for considering new claims or new allegations. *Analytical Surveys*, 684 F.3d at 52 (explaining that reconsideration does not allow for the presentation of "the case under new theories"). The Court grants Plaintiff leave to file a Second Amended Complaint to assert any due process or statutory claims arising from the alleged deficient procedures with regard to her Medicaid benefits.

### e. Plaintiff's Fair Housing Act claim

In the Amended Complaint, Plaintiff references the FHA in explaining her objections to being categorized as a "ward" of the City and to the City's alleged denial of her request for benefits due to her status as a single person.[4] (Am. Compl. 30.) In support of her Motion to Reopen, Plaintiff argues that the Court overlooked "a recent court decision [which] enlarged the application" of the FHA "so that a current or prospective tenant should not suffer an adverse impact to a person in a protected class." (Pl. Mot. 7.) Plaintiff argues that her claims are among

---

[3] The Court notes that Plaintiff cannot bring a claim against the HRA. The Court previously dismissed Plaintiff's claims against the HRA because, as an agency of the City, it is not a suable entity. *Siino I*, 2015 WL 1877654, at *2. Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter, chap. 17 § 396. This provision "has been construed to mean that New York City departments [and agencies], as distinct from the City itself, lack the capacity to be sued." *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159–60 (2d Cir. 2008) (citing *Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007)); *see also Shamilov v. Human Res. Admin.*, No. 10-CV-8745, 2011 WL 6085550, at *5 (S.D.N.Y. Dec. 6, 2011) ("As a municipal agency of New York City, the HRA is not a suable entity." (citing N.Y. City Charter, chap. 17 § 396; *Ximines*, 516 F.3d at 160)).

[4] Plaintiff asserted that the "City does not always meet the needs of an individual (once upon a time, a family of one under The Fair Housing Act): after all, [Plaintiff], eventually categorized as 'A Ward' in a guardianship, is separate but not equal to families and even other individuals." (Am. Compl. 30.)

the remedies provided under the FHA for people in a protected class who are subjected to an "adverse impact." (*Id.*) She states that she is "a religious person" and that she suffered an adverse impact when the City "subjected [her], unlike others, to a psychiatric examination which yielded inaccurate results" and ultimately led to her guardianship and to the alleged loss of her social security benefits and pension. (*Id.*)

In the Supplementary Motion, Plaintiff explains that she has not previously attempted to assert claims based on her disability because she thought and "continues to think that she is neither mentally impaired nor lacks capacity." (Pl. Supp. Mot. 4.) However, Plaintiff argues that, because she was "labeled mentally impaired by [the] HRA and perceived as mentally impaired by [the] HRA," she now seeks to assert "a claim for disparate impact in housing based on disability." (*Id.* at 4.)

In both the Motion to Reopen and the Supplementary Motion, Plaintiff appears to reference the Supreme Court's recent decision in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. ---, 135 S. Ct. 2507 (2015), (hereinafter "*Inclusive Communities*") in which the Supreme Court held that disparate-impact claims are cognizable under the FHA.[5] *Inclusive Communities*, 576 U.S. at ---, 135 S. Ct. at 2510. A plaintiff suing under the FHA can rely either on evidence of intentional discrimination or on evidence that the challenged practice had a "disparate impact." *Id.*, 576 U.S. at ---, 135 S. Ct. at 2511–12 (finding that amendments to the FHA signal Congress' intent to approve of such claims, and that disparate impact claims are consistent with the FHA's central purpose).

---

[5] Prior to the Supreme Court's decision, the Second Circuit had already recognized disparate impact claims under the FHA. *See Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (stating that disparate impact claims are cognizable under the FHA); *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45 (2d Cir. 2002) (same).

In the July 9, 2015 Decision, the Court did not address whether Plaintiff's allegations were sufficient to state a claim pursuant to the FHA under a disparate impact theory or any other theory. As the Court overlooked Plaintiff's single reference to the FHA, the Court now considers whether the allegations in the Amended Complaint state a claim pursuant to the FHA.

The FHA makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of . . . religion [or] family status." 42 U.S.C. § 3604(a); *see also Inclusive Communities*, 576 U.S. at ---, 135 S. Ct. at 2516 (explaining that the FHA initially made it unlawful "to discriminate in the sale or rental of any housing . . . on the basis of race, creed, color, or national origin"); *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) (citing Section 3604(a) of the FHA). It also prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of . . . religion [or] family status." § 3604(b). "[T]he FHA forbids those practices that make housing unavailable to persons on a discriminatory basis as well as discriminatory terms and conditions with respect to housing that is provided." *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 88 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz*, 534 U.S. 506. To establish discrimination under the FHA, plaintiffs "have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Tsombanidis*, 352 F.3d at 573 (quoting *City of Middletown*, 294 F.3d at 45).

Generously construing the Amended Complaint, Plaintiff appears to allege that the City discriminated against her by denying her benefits, including renal assistance, on the basis on her status as a single person and based on her religion. In the Supplementary Motion, Plaintiff also

argues for leave to assert a claim that the City discriminated against her on the basis of disability, due to her mental illness.

### i. Family status discrimination claim

Plaintiff alleges that the Department of Homeless Services, an agency of the City, denied her rental assistance because of a policy that limited such benefits to families with children, and thus, the City discriminated against her based on her status as a "[c]hildless [i]ndividual." (Am. Compl. 7.)

The FHA bans discrimination against families with children. *See* 42 U.S.C. § 3602 ("The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years."); *Khalil v. Farash Corp.*, 277 F. App'x 81, 83 (2d Cir. 2008) (explaining that "families with children, a class protected by the statute" may state an FHA claim of discrimination, including claims based on a hostile housing environment theory). The protected class based on "family status" does not, however, create a cause of action for discrimination based on childlessness. *See Meyer v. Bear Rd. Assoc.*, 124 F. App'x 686, 688 (2d Cir. 2005) ("To establish a disparate impact claim under 42 U.S.C. § 3604(b), plaintiffs-appellants must demonstrate that a facially neutral policy actually or predictably leads to under-representation of families with children in the housing relative to the general population." (citing *Hack*, 237 F.3d at 90–91)); *Khalil*, 277 F. App'x at 84 (explaining that plaintiffs failed to state a claim for discrimination based on family status because they did not show a "significantly adverse or disproportionate impact on families with children"). Based on Plaintiff's allegations, she is not a member of a protected class under the FHA, which precludes discrimination based on family status. Therefore, Plaintiff has not sufficiently alleged a claim for family status

discrimination. *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003) (explaining that to state a case of housing discrimination under the FHA, plaintiffs must show "(1) that they are members of a protected class; (2) that they sought and were qualified to rent or purchase the housing; (3) that they were rejected; and (4) that the housing opportunity remained available to other renters or purchasers").

### ii. Religious discrimination claim

Plaintiff alleges that she was subjected to religious discrimination in violation of the FHA as a result of the City's adherence to one of its housing policies in Plaintiff's case. To state a claim under the FHA based on a defendant's adherence to a policy, a plaintiff must allege that the defendant "adopted an identified policy that denied [the plaintiff] housing or granted [the plaintiff] housing on discriminatory terms and conditions for reasons that were, in significant part, discriminatory or that the identified policy although adopted for neutral reasons has a discriminatory impact on the availability of housing for [members of the plaintiff's protected group] or the terms and conditions on which the housing is offered." *Hack*, 237 F.3d at 88; *see also Whitaker*, 531 F. App'x at 91 (stating that to establish a prima facie disparate impact claim for housing discrimination, a plaintiff must establish "she sought and was qualified to rent or purchase the housing" and a "significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices" (citations omitted)).

Plaintiff alleges that the City subjected her to a psychiatric examination due to her religious beliefs, which led to her guardianship and to the loss of her social security benefits and pension. (Pl. Mot. 7; *see also* Am. Compl. 4–7.) She appears to allege that an employee of a City agency made "derogatory remarks" about her religious beliefs. (Am. Compl. 7.) While

Plaintiff argues elsewhere that the City improperly denied her rental assistance, Plaintiff makes no allegations that connect any alleged religious discrimination by the City to any actions or policies by the City in connection with Plaintiff's housing. *See* 42 U.S.C. § 3604(a) (prohibiting discrimination in the sale or rental of housing, in "otherwise mak[ing] unavailable or deny[ing]" housing, "or in the provision of services or facilities in connection with such dwelling"). As such, Plaintiff has failed to allege that a City action or policy "denied [her] housing or granted [her] housing on discriminatory terms and conditions for reasons that were, in significant part, discriminatory." *Hack*, 237 F.3d at 88. Plaintiff also fails to present any allegations that could be construed to allege the existence of a policy that has a "discriminatory impact on the availability of housing" for members of her religion. *Id*. The Amended Complaint therefore fails to state sufficient facts to plausibly allege that Defendants may be liable for violations of the FHA based on religious discrimination.

### iii. Disability discrimination

Plaintiff alleges that the City discriminated against her with respect to her housing, "based on disability." (Pl. Supp. Mot. 4.) Plaintiff appears to allege that she was deprived of housing benefits because she was "labeled mentally impaired by [the] HRA and perceived as mentally impaired by [the] HRA." (*Id*. at 4.)

The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1).[6] The FHA defines "handicap" to include a "mental impairment which substantially

---

[6] Plaintiff does not explicitly assert a claim under the Americans with Disabilities Act ("ADA"). However, because the ADA, like the FHA, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination

limits one or more of [a] person's major life activities." *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 152 (2d Cir. 2014) (quoting 42 U.S.C. § 3602(h)(1)) (further explaining that, pursuant to HUD regulations, "[m]ajor life activities" impacted by a handicap are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working" (quoting 24 C.F.R. § 100.201(a)(2))). The FHA requires "that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities." *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 49 (2d Cir. 2012) (internal quotation marks omitted) (citing *City of Middletown*, 294 F.3d at 45).

To prove intentional disability discrimination under the FHA, "a plaintiff must establish: '(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability.'" *Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 17 (2d Cir. 2015) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d Cir. 2003)).

To establish an FHA disparate impact claim, "a plaintiff must show: '(1) the occurrence of certain outwardly neutral practices, and (2) *a significantly adverse or disproportionate impact on persons of a particular type* produced by the defendant's facially neutral acts or practices.'"

---

by any such entity," 42 U.S.C. § 12132, the Court broadly construes Plaintiff's allegations as attempting to allege a claim under the ADA. To state a claim for injunctive relief, "not monetary damages, a plaintiff must 'establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA[.]'" *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012) (quoting *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)); *see also Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (outlining the test for disability discrimination).

*Tsombanidis*, 352 F.3d at 573 (quoting *City of Middletown*, 294 F.3d at 52–53).  The plaintiff

must allege "a causal connection between the facially neutral policy and the alleged

discriminatory effect."  *Id*. (citing *Hack*, 237 F.3d at 90–91) ("The basis for a successful

disparate impact claim involves a comparison between two groups — those affected and those

unaffected by the facially neutral policy.").

  To make out a FHA claim of disability discrimination based on a defendant's failure to

reasonably accommodate, "a plaintiff must show (1) that the plaintiff or a person who would live

with the plaintiff had a handicap within the meaning of [the FHA]; (2) that the defendant knew

or reasonably should have been expected to know of the handicap; (3) that the accommodation

was likely necessary to afford the handicapped person an equal opportunity to use and enjoy the

dwelling; (4) that the accommodation requested was reasonable; and (5) that the defendant

refused to make the requested accommodation."  *Olsen*, 759 F.3d at 156; s*ee also Tsombanidis*,

352 F.3d at 578 (A plaintiff must "first provide the governmental entity an opportunity" to

provide an accommodation, such that the governmental entity "knows what a plaintiff seeks prior

incurring liability for failing to affirmatively grant a reasonable accommodation."); *Bentley v.

Peace and Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005) (discussing elements

of a reasonable accommodation claim).  Plaintiffs have the burden of showing that "but for the

accommodation, they likely will be denied an equal opportunity to enjoy the housing of their

choice."  *Tsombanidis*, 352 F.3d at 578.

  Plaintiff concedes that she has not previously asserted an FHA disability discrimination

under any theory.  Rather than consider Plaintiff's allegations in the Supplementary Motion to

determine whether she has stated a claim for housing discrimination based on a disability, the

Court grants Plaintiff leave to file a Second Amended Complaint to assert her disability

discrimination claims.

### f. Leave to amend

Plaintiff requests one hundred and twenty (120) days' leave to file a Second Amended Complaint due to her recent medical treatment. The Court grants Plaintiff's request as to her (1) due process and statutory claims related to her Medicaid benefits and (2) her disability discrimination claims. The Second Amended Complaint must contain a brief factual description of her allegations in support of these claims. For each defendant named in the caption of the Second Amended Complaint, Plaintiff must include a brief description of what that defendant did or failed to do, and how that act or omission caused Plaintiff's injury. Plaintiff may not rely on legal conclusions and must allege clear and concise facts to support each of her claims. *See* Fed. R. Civ. P. 8(a). The facts relevant to each claim should be alleged in chronological order by date. Each event should be described in a separate numbered paragraph, and Plaintiff should provide the dates and locations of all relevant events. The amended complaint must be captioned "Second Amended Complaint" and bear the same docket number as this Memorandum and Order.

### III. Conclusion

For the foregoing reasons, the Court denies Plaintiff's motion to reconsider the July 9, 2015 dismissal of the claims asserted in the Amended Complaint. The Court also dismisses Plaintiff's FHA claims asserting discrimination based on family status or religion, considered for the first time. The Court grants Plaintiff's request to reopen the case and grants Plaintiff one hundred and twenty (120) days' leave to file a Second Amended Complaint, with respect to her due process or statutory claims based on alleged procedural deprivations related to her Medicaid benefits and her disability discrimination claims.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: February 19, 2016
      Brooklyn, New York